TRINA A. HIGGINS, United States Attorney (#7349)
TODD C. BOUTON, Assistant United States Attorney (#17800)
SACHIKO J. JEPSON, Special Assistant United States Attorney (#17077)
JACOB J. STRAIN, Assistant United States Attorney (#12680)
Attorneys for the United States of America
Office of the United States Attorney
111 South Main Street, Suite 1800
Salt Lake City, Utah 84111-2176
Telephone: (801) 524-5682

FILED US District Court-UT
JAN 15 '25 AM 11:14

# IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>PLASTIC SURGERY INSTITUTE OF UTAH, INC.; MICHAEL KIRK MOORE JR.; and KRISTIN JACKSON ANDERSEN,<br><br>Defendants. | Case No. 2:23-cr-00010-HCN<br><br>**SECOND SUPERSEDING INDICTMENT**<br><br>VIOLATIONS:<br><br>Count 1: 18 U.S.C. § 371, Conspiracy to Defraud the United States<br><br>Count 2: 18 U.S.C. §§ 371 and 641, Conspiracy to Convert, Sell, Convey, and Dispose of Government Property<br><br>Count 3: 18 U.S.C. §§ 641 and 2, Conversion, Sale, Conveyance, and Disposal of Government Property and Aiding and Abetting<br><br>Count 4: 18 U.S.C. § 1512(b)(2)(B), Destruction of Evidence |

The Grand Jury Charges:

**<u>Introductory Allegations</u>**

At all times relevant to this Indictment:

1.      Defendants herein and others known and unknown to the Grand Jury ran a scheme out of the Plastic Surgery Institute of Utah, Inc. to defraud the United States and the Centers for Disease Control and Prevention ("CDC"), an agency within the United States Department of Health and Human Services ("HHS"), whereby they destroyed hundreds of doses of government-provided COVID-19 vaccines, and in exchange for either direct cash payments or, most often, required "donations" to a specified charitable organization, defendants distributed COVID-19 vaccination record cards to persons without administering a COVID-19 vaccine to them and administered saline shots to minor children to trick them into thinking they had received a vaccine.

2.      Defendant PLASTIC SURGERY INSTITUTE OF UTAH, INC. ("PLASTIC SURGERY INSTITUTE") is a corporation organized under the laws of the state of Utah with its principal place of business in the state of Utah. PLASTIC SURGERY INSTITUTE operates out of Midvale, Utah and provides cosmetic surgery services to patients.

3.      Defendant MICHAEL KIRK MOORE JR. ("DR. MOORE") was a resident of Salt Lake County, Utah. DR. MOORE was a board-certified plastic surgeon who owned and operated the PLASTIC SURGERY INSTITUTE. DR. MOORE was a member of Organization 1, a private organization seeking to "liberate" the medical profession from government and industry conflicts of interest.

4.      Defendant KRISTIN JACKSON ANDERSEN ("ANDERSEN") was a resident of Salt Lake County, Utah. ANDERSEN lived in DR. MOORE's neighborhood and knew DR. MOORE from her own membership in Organization 1.

5.      KARI DEE BURGOYNE ("BURGOYNE") was a resident of Salt Lake County, Utah. BURGOYNE was the Office Manager for the PLASTIC SURGERY INSTITUTE.

6.      SANDRA FLORES ("FLORES") was a resident of Utah County. FLORES worked as a receptionist at the PLASTIC SURGERY INSTITUTE.

**The Federal COVID-19 Vaccination Program**

7.      On or about January 31, 2020, the Secretary of the United States Department of Health and Human Services ("HHS") declared a national public health emergency under 42 U.S.C. § 247d as a result of the spread of a novel coronavirus to and within the United States. This coronavirus was called SARS-CoV-2 and was also known as "COVID-19." On or about March 13, 2020, as a result of the rapid spread of COVID-19 within the United States, the President of the United States issued Proclamation 9994, declaring a national emergency beginning on March 7, 2020. As part of the response to the pandemic, the federal government provided funding to pharmaceutical and biotechnology companies capable of developing a vaccine for COVID-19.

8.      On or about December 11, 2020, the United States Food and Drug Administration (the "FDA") approved the Pfizer COVID-19 vaccine for emergency use. On or about December 18, 2020, the FDA also approved the Moderna COVID-19 vaccine for emergency use. Each vaccine was approved as a two-dose regimen.

9.      Then, on or about February 27, 2021, the FDA issued another emergency use authorization ("EUA") for the Janssen COVID-19 Vaccine. The Janssen COVID-19 Vaccine was manufactured by Janssen Biotech Inc., a Janssen Pharmaceutical Company of Johnson & Johnson. The Janssen COVID-19 Vaccine was approved as a single-dose regimen.

10.     Consistent with these emergency authorizations, the Centers for Disease Control and Prevention ("CDC") prepared for widespread administration of the COVID-19 vaccines at a

variety of locations. The intent was to make a COVID-19 vaccine available to all authorized adults in the United States who wanted to receive a vaccine.

11.    The vaccines were made available exclusively through the United States Federal Government. There were no third-party resellers of COVID-19 vaccines, and no company or organization was allowed to import COVID-19 vaccines from another country.

12.    To make the COVID-19 vaccines available to authorized persons in the United States, the government purchased millions of COVID-19 vaccine doses from Pfizer, Moderna, and Johnson & Johnson. The federal government determined that these COVID-19 vaccine doses were to be distributed at no cost to vaccine recipients through the providers approved by the CDC to receive and distribute the vaccine.

13.    From approximately March 2021, the CDC paid at least:

    a. $20.00 for each adult dose of the Pfizer COVID-19 vaccine with an accompanying diluent;

    b. $24.50 for each pediatric dose of the Pfizer COVID-19 vaccine;

    c. $12.25 for each dose of the Moderna COVID-19 vaccine; and

    d. $7.50 for each dose of the Janssen COVID-19 vaccine.

14.    To further provide for the administration of COVID-19 vaccines, the United States also contracted with companies to print COVID-19 vaccination record cards according to certain CDC specifications ("COVID-19 Vaccination Record Cards"). The United States required that the COVID-19 Vaccination Record Cards include a space to record the dates of the first and (where needed) second vaccine doses, and that the COVID-19 Vaccination Record Cards be distributed as part of the vaccine ancillary kits sent to each vaccine distribution location.

/ / /

15.    To facilitate the proper administration of the COVID-19 vaccines, the CDC and HHS also developed rules and protocols for the entities that would administer the vaccines at locations around the United States ("vaccine distributing entities").

16.    These protocols required all vaccine distributing entities that administered the COVID-19 vaccines at physical locations to provide a COVID-19 Vaccination Record Card to each vaccine recipient after they had received their COVID-19 vaccine.

17.    To ensure that vaccine distributing entities appropriately administered the COVID-19 vaccines and appropriately distributed COVID Vaccination Record Cards, the CDC required such entities to sign a CDC COVID-19 Vaccination Program Provider Agreement before they could receive COVID-19 vaccines for distribution to the public. Among other things, these CDC Provider Agreements required vaccine distributing entities to:

    a.    Administer COVID-19 vaccines in accordance with all requirements and recommendations of the CDC and the CDC's Advisory Committee on Immunization Practices;

    b.    Within 24 hours of administering a dose of COVID-19 vaccine, to record the vaccine recipient's record and to report required information to the relevant state, local, or territorial public health authority;

    c.    Not sell or seek reimbursement for any COVID-19 vaccine that the federal government provided to the organization without cost;

    d.    Administer the vaccine regardless of the vaccine recipient's ability to pay for the administration of the vaccine;

/ / /

/ / /

5

e. Conduct its COVID-19 vaccination services in compliance with the CDC's Guidance for Immunization Services During the COVID-19 Pandemic for safe delivery of vaccines;

f. Report the number of doses of COVID-19 vaccines that were unused, spoiled, expired, or wasted as required by the relevant jurisdiction;

g. Provide a completed COVID-19 vaccination record card to every COVID-19 vaccine recipient; and

h. Administer the COVID-19 vaccines in compliance with all applicable state and territorial vaccination laws.

18. The CDC included COVID-19 Vaccination Record Cards in each COVID-19 vaccine shipment to a vaccine distributing entity.

## COUNT 1
18 U.S.C. § 371
(Conspiracy to Defraud the United States)

19. The allegations in paragraphs 1-18 are incorporated by reference and realleged as though fully set forth herein.

20. On or before May 12, 2021, and continuing to at least September 6, 2022, in the District of Utah and elsewhere,

**PLASTIC SURGERY INSTITUTE OF UTAH, INC.,
MICHAEL KIRK MOORE JR., and
KRISTIN JACKSON ANDERSEN,**

defendants herein, did unlawfully, voluntarily, intentionally, and knowingly conspire, combine, confederate, and agree together and with each other and with other individuals both known and unknown to the Grand Jury, with interdependence among the members of the conspiracy, to defraud the United States by deceit, craft, trickery, and dishonest means for the purpose of

impeding, impairing, obstructing, and defeating the lawful governmental functions of the CDC and HHS in distributing and administering authorized COVID-19 vaccines and COVID-19 Vaccination Record Cards through approved vaccine distributing entities, and doing so in a manner that would provide a reliable means of verifying persons' vaccination status.

Object of the Conspiracy

21.     It was the object of the conspiracy for the defendants and other individuals to unlawfully, voluntarily, intentionally, and knowingly defraud the United States of America and an agency thereof, that is, the Centers for Disease Control and Prevention (an agency under the direction of HHS), by impeding, impairing, obstructing, and defeating the lawful governmental functions of the CDC and HHS in distributing and administering authorized COVID-19 vaccines and COVID-19 Vaccination Record Cards through approved vaccine distributing entities, and doing so in a manner that would provide a reliable means of verifying persons' vaccination status.

Manner and Means of the Conspiracy

22.     Among the manner and means by which defendants and others (the "Co-Conspirators") sought to accomplish the object and purpose of the conspiracy were the following:

a.     In furtherance of the conspiracy, on or about May 12, 2021, DR. MOORE signed a CDC COVID-19 Vaccination Program Provider Agreement so that he could receive COVID-19 vaccines and COVID-19 Vaccination Record Cards from the CDC at the Plastic Surgery Institute.

b.     In furtherance of the conspiracy, on or about May 24, 2021, DR. MOORE and BURGOYNE caused Surgeon 1—another plastic surgeon who worked with DR. MOORE at the time—to also sign the CDC COVID-19 Vaccination Program Provider Agreement.

7

c.   In furtherance of the conspiracy, between on or about May 24, 2021, and September 23, 2022, DR. MOORE and BURGOYNE ordered hundreds of doses of COVID-19 vaccines from the CDC, ostensibly for administration to others at the Plastic Surgery Institute.

d.   In furtherance of the conspiracy, on October 15, 2021, DR. MOORE and BURGOYNE and others began receiving doses of COVID-19 vaccines from the CDC at the Plastic Surgery Institute.

e.   In furtherance of the conspiracy, on or before October 15, 2021, DR. MOORE, BURGOYNE, and others began to notify persons seeking to receive a COVID-19 Vaccination Record Card without receiving a vaccine ("Fraudulent Vax Card Seekers") that they could receive completed COVID-19 Vaccination Record Cards from the Plastic Surgery Institute without having to receive a COVID-19 vaccine.

f.   In furtherance of the conspiracy, starting on or before November 9, 2021, in exchange for some direct cash payments but most often for directed donations of $50 per person per occurrence, DR. MOORE and BURGOYNE began to distribute and caused to be distributed COVID-19 Vaccination Record Cards to Fraudulent Vax Card Seekers who came into the Plastic Surgery Institute to receive the cards, without administering a COVID-19 vaccine to them.

g.   In furtherance of the conspiracy, DR. MOORE arranged to have BURGOYNE manage the day-to-day logistics of the scheme. DR. MOORE, BURGOYNE, and ANDERSEN set up a screening mechanism for Fraudulent Vax Card Seekers. When Fraudulent Vax Card Seekers contacted the Plastic Surgery Institute, BURGOYNE would refer them to ANDERSEN and tell them they had to go through her.

h.   In furtherance of the conspiracy, ANDERSEN would then screen the purported Fraudulent Vax Card Seekers by requiring them to provide her with the name of another

Fraudulent Vax Card Seeker who had already received a COVID-19 Vaccination Record Card from the Plastic Surgery Institute without actually receiving a COVID-19 vaccine.

i.  In furtherance of the conspiracy, once ANDERSEN had successfully screened the Fraudulent Vax Card Seekers by verifying the name of their referral, she would provide them a link to Organization 1's website. She would require them to make a $50 "donation" for each person and each appointment to receive a fraudulent entry on a COVID-19 Vaccination Record Card suggesting that the person had actually been vaccinated. The $50 "donations" were made to a "charitable organization" linked to Organization 1.

j.  In furtherance of the conspiracy, after the Fraudulent Vax Card Seekers verified they had made their required $50 "donations," ANDERSEN sent them forms to complete.

k.  In furtherance of the conspiracy, after the required forms were completed and submitted, ANDERSEN directed Fraudulent Vax Card Seekers to schedule an appointment to pick up a COVID-19 Vaccination Record Card from the Plastic Surgery Institute.

l.  In furtherance of the conspiracy, pursuant to DR. MOORE's and BURGOYNE's instructions, when the Fraudulent Vax Card Seekers came to pick up their fraudulent COVID-19 Vaccination Record Cards, FLORES and other employees at the Plastic Surgery Institute would then fill in and stamp COVID-19 Vaccination Record Cards to falsely indicate that the Fraudulent Vax Card Seekers had actually received a dose of a COVID-19 vaccine. Further pursuant to DR. MOORE's and BURGOYNE's instructions, FLORES and other employees would then provide the Fraudulent Vax Card Seekers with the completed COVID-19 Vaccination Record Cards without administering any COVID-19 vaccine to them.

///

///

m.    In furtherance of the conspiracy, and with the intent to benefit PLASTIC SURGERY INSTITUTE, among other things, part of the proceeds from the $50 "donations" were diverted to pay the salary of FLORES.

n.    Between on or about October 15, 2021, and at least September 6, 2022, DR. MOORE, BURGOYNE, ANDERSEN, FLORES, and others conveyed and sold without authority COVID-19 Vaccination Record Cards to Fraudulent Vax Card Seekers that were fraudulently completed to falsely reflect that the Fraudulent Vax Card Seekers had received at least 1937 doses of bona fide COVID-19 vaccines, when, in fact, they had received none.

o.    In furtherance of the conspiracy, DR. MOORE, BURGOYNE, and FLORES also arranged, at times, to administer or have others administer saline shots to minor children at the request of their parents so that the minor children would think they were actually receiving a COVID-19 vaccine.

p.    In furtherance of the conspiracy, DR. MOORE and BURGOYNE continued to arrange to have a total of approximately 2,200 doses of COVID-19 vaccines delivered to the Plastic Surgery Institute without intending to administer any of them to the public.

q.    In furtherance of the conspiracy, the Defendants destroyed or caused to be destroyed viable doses of COVID-19 vaccines.

r.    In furtherance of the conspiracy, between on or about October 15, 2021, and at least September 6, 2022, Defendants arranged for BURGOYNE to upload or cause to be uploaded the names of all purported COVID-19 vaccine recipients who requested it to the Utah Statewide Immunization Information System. Defendants caused to be uploaded to this system records purporting to show that the Plastic Surgery Institute had administered at least 1937 doses of COVID-19 vaccines.

10

s.     Between on or before October 15, 2021, and at least September 6, 2022, DR. MOORE, BURGOYNE, ANDERSEN, FLORES, and others improperly converted and disposed of or caused to be disposed of at least $28,028.50 worth of COVID-19 vaccines, without administering any of those vaccines to anyone, as follows:

| Type of COVID-19 Vaccine | Number of Doses | Cost Per Dose | Value of Doses |
|---|---|---|---|
| Janssen | 958 | $7.50 | $7,185 |
| Moderna | 64 | $12.25 | $784 |
| Pfizer | 524 | $20.00($19.50 per dose + 50-cent diluent per dose) | $10,480 |
| Pfizer Pediatric | 391 | $24.50 | $9,579.50 |
| | | Total: | $28,028.50 |

Overt Acts to Effect the Object of the Conspiracy

23.     In furtherance of the conspiracy and in order to achieve the unlawful objectives and purposes of their conspiracy, PLASTIC SURGERY INSTITUTE, DR. MOORE, BURGOYNE, ANDERSEN, FLORES, and others, aiding and abetting each other, committed or caused to be committed the following overt acts, among others, in the District of Utah and elsewhere:

a.     On around May 12 and 24, 2021, defendants DR. MOORE and BURGOYNE signed or caused to be signed a CDC COVID-19 Vaccination Program Provider Agreement so that DR. MOORE could receive COVID-19 vaccines and CDC COVID-19 Vaccination Record Cards at the Plastic Surgery Institute.

*Undercover Agent 1:*

b.     On or about March 3, 2022, when Undercover Agent 1 called the Plastic Surgery Institute to inquire about scheduling a "vaccine appointment," BURGOYNE told

11

Undercover Agent 1 that "everybody needs to go through Kris [ANDERSEN]" and gave Undercover Agent 1 ANDERSEN's phone number.

c.      On or about March 3, 2022, when Undercover Agent 1 called back a few minutes later and asked BURGOYNE, "Do I still need to contact Kris [ANDERSEN] for the paperwork if I just want the card and not the vaccine?" BURGOYNE replied, "Yes."

d.      On or about April 25, 2022, Undercover Agent 1 went to the Plastic Surgery Institute and received a COVID-19 Vaccination Record Card without receiving the vaccine. At that visit, Undercover Agent 1 was also provided a QR code to submit a Google review for Plastic Surgery Institute.

All in violation of Title 18, United States Code, Section 371.

## COUNT 2
18 U.S.C. §§ 371 and 641
(Conspiracy to Convert, Sell, Convey, and Dispose of Government Property)

24.      The allegations in paragraphs 1-23 are incorporated by reference and realleged as though fully set forth herein.

25.      On or before May 12, 2021, and continuing to at least September 23, 2022, in the District of Utah and elsewhere,

**PLASTIC SURGERY INSTITUTE OF UTAH, INC.
MICHAEL KIRK MOORE JR., and
KRISTIN JACKSON ANDERSEN,**

defendants herein, and others did unlawfully, voluntarily, intentionally, and knowingly conspire, combine, confederate, and agree together and with each other and with other individuals both known and unknown to the Grand Jury, with interdependence among the members of the conspiracy, to commit an offense against the United States, to wit: Conversion and Unauthorized

12

Sale, Conveyance, and Disposal of Government Property in violation of Title 18, United States Code, Section 641.

### Objects of the Conspiracy

26.     The objects of the conspiracy were for the defendants and other individuals to unlawfully, voluntarily, intentionally, and knowingly commit an offense against the United States of America and an agency thereof, that is, the Centers for Disease Control and Prevention, by (1) without authority, disposing of the COVID-19 vaccines that were provided to the Plastic Surgery Institute pursuant to a CDC COVID-19 Vaccination Program Provider Agreement; (2) converting COVID-19 Vaccination Record Cards to defendants' own use and the use of others; and (3) without authority, selling and conveying the COVID-19 Vaccination Record Cards to others—the COVID-19 Vaccination Record Cards and COVID-19 vaccines being a thing of value of the United States and a department or agency thereof, and property made or being made under contract for the United States and a department or agency thereof, that is, the CDC.

### Manner and Means of the Conspiracy

27.     The manner and means of the conspiracy are detailed above in paragraph 22 and are incorporated by reference and re-alleged as though fully set forth herein.

### Overt Acts in Furtherance of the Conspiracy

28.     The overt acts that PLASTIC SURGERY INSTITUTE, DR. MOORE, BURGOYNE, ANDERSEN, FLORES, and others committed in furtherance of the conspiracy and to effect its unlawful objectives and purposes, are detailed above in paragraph 23 and are incorporated by reference and re-alleged as though fully set forth herein.

All in violation of Title 18, United States Code, Sections 371 and 641.

## COUNT 3

18 U.S.C. §§ 641 and 2
(Conversion, Sale, Conveyance, and Disposal of Government Property and Aiding and Abetting)

29.    The allegations in paragraphs 1-28 are incorporated by reference and realleged as though fully set forth herein.

30.    On or about the dates set forth below, in the District of Utah and elsewhere,

**PLASTIC SURGERY INSTITUTE OF UTAH, INC.,
MICHAEL KIRK MOORE JR., and
KRISTIN JACKSON ANDERSEN**

defendants herein, did embezzle, steal, purloin, and knowingly convert to their use or the use of another, and without authority, sold, conveyed, and disposed of a thing of value of the United States or of a department or agency thereof and of property made or being made under contract for the United States and a department or agency thereof, that is, the Centers for Disease Control and Prevention, namely approximately 1937 doses of COVID-19 vaccines and corresponding COVID-19 Vaccination Record Cards, with an aggregate value exceeding $1,000, as follows:

| Dates (On or About) | Approximate Value of COVID-19 Vaccines Improperly Disposed of | Approximate Value of Vaccination Record Cards Improperly Conveyed | Total Value of Gov't Property |
|---|---|---|---|
| November 9, 2021 to September 6, 2022 | $28,028.50 | $96,850 (1937 doses' worth x $50 each) | $124,878.50 |

31.    And did aid, abet, counsel, command, induce and procure the commission of the offense.

All in violation of Title 18, United States Code, Sections 641 and 2.

## COUNT 4

18 U.S.C. § 1512(b)(2)(B)
(Destruction of Evidence)

32.    Shortly after January 11, 2023, after being indicted, and within the District of Utah,

14

**MICHAEL KIRK MOORE JR.,**

defendant herein, did knowingly and corruptly persuade BURGOYNE to destroy and conceal

hundreds of doses of COVID-19 vaccines with the intent to impair their integrity and availability

for use in an official proceeding, to wit: the pending federal criminal case of *U.S. v. Plastic Surgery*

*Institute of Utah, et al.*, Case No 2:23-cr-00010-HCN, in the U.S. District Court for the District of

Utah.

All in violation of Title 18, United States Code, Section 18 U.S.C. § 1512(b)(2)(B).

## **NOTICE OF INTENT TO SEEK FORFEITURE**

Pursuant to 18 U.S.C. § 981(a)(1)(C), and 28 U.S.C. § 2461, upon conviction of any

offense charged herein in violation of 18 U.S.C. § 371, defendants shall forfeit to the United States

of America, any property, real or personal, that constitutes or is derived, directly or indirectly, from

gross proceeds traceable to the commission of the offense.

The property to be forfeited includes, but is not limited to, the following:

- All remaining doses of COVID-19 vaccines in defendants' possession, custody, or control;
- All remaining COVID-19 Vaccination Record Cards in defendants' possession, custody, or control;
- A money judgment in the amount of approximately $124,878.50; and
- Substitute property as allowed by 28 U.S.C. § 2461(c) and 21 U.S.C. § 853(p).

Pursuant to 18 U.S.C. § 981(a)(1)(C), and 28 U.S.C. § 2461, upon conviction of any offense

charged herein in violation of 18 U.S.C. §§ 371 and 641, defendants shall forfeit to the United

States of America, any property, real or personal, that constitutes or is derived, directly or

indirectly, from gross proceeds traceable to the commission of the offense.

The property to be forfeited includes, but is not limited to, the following:

- All remaining doses of COVID-19 vaccines in defendants' possession, custody, or control;

15

- All remaining COVID-19 Vaccination Record Cards in defendants' possession, custody, or control;
- A money judgment in the amount of approximately $124,878.50; and
- Substitute property as allowed by 28 U.S.C. § 2461(c) and 21 U.S.C. § 853(p).

Pursuant to 18 U.S.C. § 981(a)(1)(C), and 28 U.S.C. § 2461, upon conviction of any offense charged herein in violation of 18 U.S.C. § 641, defendants shall forfeit to the United States of America, any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense.

The property to be forfeited includes, but is not limited to, the following:

- All remaining doses of COVID-19 vaccines in defendants' possession, custody, or control;
- All remaining COVID-19 Vaccination Record Cards in defendants' possession, custody, or control;
- A money judgment in the amount of approximately $124,878.50; and
- Substitute property as allowed by 28 U.S.C. § 2461(c) and 21 U.S.C. § 853(p).

A TRUE BILL:

_____
FOREPERSON OF GRAND JURY

TRINA A. HIGGINS
United States Attorney

Todd C. Bouton
Assistant United States Attorney